23710

WAUSAU UNDERWRITERS INSURANCE COMPANY, Appellee v.
Nancy Reece HOWSER, Appellant.

422 S.E. (2d) 106)

Supreme Court

*Charles E. Hill* of *Turner, Padget, Graham & Laney, P.A.,* Columbia, *for appellant.*

*Hoover C. Blanton* of *Whaley, McCutchen, Blanton & Rhodes,* Columbia, *for appellee.*

Heard Sept. 23, 1991.

Decided Aug. 31, 1992.

*Per Curiam:*

Pursuant to Rule 228, SCACR, the following questions have been certified to this court by the United States Court of Appeals for the Fourth Circuit:

> 1. "Is the insurer liable under the uninsured motorist provision involving injuries 'arising out of the ownership, maintenance, or use' of an uninsured vehicle (Section 38-7-140, S.C. Code Ann.) for gunshot injuries sustained by a person traveling on a public highway in an insured vehicle and inflicted during a vehicular chase by an unknown owner or operator of an unidentified vehicle?"
>
> 2. "Is, under the circumstances of this case, subsection 2 of Section 38-77-170 ("Conditions to sue or recover under uninsured motorist provision . . . ') satisfied by the presence of an independent witness to the accident causing the injury of the defendant in this case, even though the injury was not caused by 'physical contact with the unknown vehicle?' "

We respond to both questions affirmatively.

## FACTS

Nancy Reece Howser ("Howser"), while driving her father's vehicle, was injured by an unknown assailant. Mr. Howser's vehicle was insured by Wausau Underwriters Insurance Company ("Wausau").

The details surrounding the incident are set forth in the Order of the United States District Court in *Wausau Underwriters Insurance Co. v. Howser,* 727 F. Supp. 999 (D.S.C. 1990):

> On the night of June 13, 1987, Howser and her friend, Lisa Annette Shealy ("Shealy"), left a bowling alley in

their hometown of Columbia, South Carolina, and headed home in a 1985 Chevrolet S-10 Blazer driven by Howser and owned by her father. After stopping at a McDonald's restaurant at the intersection of Decker Boulevard and Trenholm Road, they drove down Trenholm Road in the inside lane of the four-lane road. After about one-tenth of a mile, the Blazer was "bumped" from behind. Howser looked in the rear view mirror and saw a car behind them with a driver and no passengers. The car bumped the Blazer two more times and Howser accelerated the Blazer. The driver of the other car, who was unknown to them, pulled his car alongside the Blazer in the outside lane and yelled at them to roll down their window, slow down and stop their car. He pointed a pistol at the Blazer's passenger window where Shealy was seated. Howser made a quick left turn onto a side street to avoid the stranger's assault. As she completed her turn, the gunman shot at the Blazer. A bullet entered the rear of the vehicle, fragmented, pierced the driver's car seat and entered Howser's back in three places. Howser managed to bring the Blazer to a stop before losing consciousness and Shealy summoned help. The gunman continued traveling down Trenholm Road. Neither he nor his vehicle has been identified.

The injuries that Howser sustained were the result of the gunshot. Neither Howser nor Shealy was hurt when the other vehicle bumped the Blazer.

Howser initially brought a 'John Doe' action in the Court of Common Pleas for Richland County, South Carolina, seeking to establish liability under the uninsured motorist (UM) provision of her father's automobile liability policy. *See* S.C. Code Ann. § 38-77-180 (1989). Wausau then brought this action seeking a declaration that Howser's injuries are not covered under the policy.

The District Court granted Wausau's motion for summary judgment, holding that Howser's injury did not arise out of the use of the assailant's vehicle. *Wausau*, 727 F. Supp. at 1006. Additionally, the District Court found Howser failed to establish that the gunman's vehicle caused her injury as required by section 38-77-170. *Id.*

## LAW/ANALYSIS

1. Is the insurer liable under the uninsured motorist provision involving injuries 'arising out of the ownership, maintenance, or use' of an uninsured vehicle (Section 38-77-140, S.C. Code Ann.) for gunshot injuries sustained by a person traveling on a public highway in an insured vehicle and inflicted during a vehicular chase by an unknown owner or operator of an unidentified vehicle?

■ It is mandatory that all automobile insurance policies issued in South Carolina contain an uninsured motorist provision "undertaking to pay the insured all sums which he is legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle." S.C. Code Ann. §38-77-150 (1989). An insured is legally entitled to recover damages "arising out of the ownership, maintenance or use" of an uninsured vehicle. S.C. Code Ann. § 38-77-140 (1989). Thus, the issue presented is whether Howser's injuries arose out of the ownership, maintenance or use of the assailant's vehicle.

The pertinent facts presented here are virtually identical to those found in *Continental Western Insurance Co. v. Klug*, 415 N.W (2d) 876 (Minn. 1987). The *Klug* court found the gunshot injuries arose out of the use of the uninsured motorist vehicle.[1] We find the analysis employed by the Minnesota Supreme Court is consistent with South Carolina law.

■ In *Klug*, the court first considered the causal connection between the vehicle and the injury. The causation required is something less than proximate cause and something more than the vehicle being the mere site of the injury. *Id.* We employed a similar analysis in *Chapman v. Allstate Insurance Co.*, 263 S.C. 565, 211 S.E. (2d) 876 (1975), wherein an uninsured motorist assaulted the insured while traveling in the uninsured's vehicle. The insured was injured when she fell or jumped from the moving vehicle as a result of

---

[1] Other courts have also found, under similar facts, the gunshot injuries arose out of the use of the vehicle. *Nationwide Mut. Ins. Co. v. Munoz*, 199 Cal. App. (3d) 1076, 245 Cal. Rptr. 324 (1988); *Fortune Ins. Co. v. Ferreiro*, 458 So. (2d) 834 (Fla. App. 1984); *Ganiron v. Hawaii Ins. Guar. Ass'n.*, 69 Haw. 432, 744 P. (2d) 1210 (1987). *Contra Nationwide Mut. Ins. Co. v. Knight*, 34 N.C. App. 96, 237 S.E. (2d) 341 (1977) *rev. den*, 293 N.C. 589, 239 S.E. (2d) 263 (1977).

the attack. Accordingly, we held it was clear the injury arose out of the use of the uninsured automobile. *Id.* at 570, 211 S.E. (2d) at 879. Although the assault, not the use of the vehicle, was the cause of the insured's injuries, we found that the use of the vehicle causally contributed to the claimant's injuries. *Id. See also Coletrain v. Coletrain,* 238 S.C. 555, 212 S.E. (2d) 89 (1961) (Court cited with approval *Fidelity & Casualty Co. of N.Y. v. Lott,* 273 F. (2d) 500 (5th Cir. 1960), wherein the death caused by the negligent discharge of a rifle when the automobile was being used as a gun rest was held to have arisen out of the use of an automobile for purposes of insurance policy).

In the case at bar, it is apparent that the unknown vehicle was an active accessory to this assault. This is not a case in which the assailant merely used the vehicle to provide transportation to the situs of the shooting as was found in *Nationwide Mut. Ins. Co. v. Brown,* 779 F. (2d) 984 (4th Cir. 1985). Nor is it a case where the assailant happened incidentally, to be sitting in a stationary vehicle at the time of the attack. Only through use of his vehicle was the assailant able to closely pursue Howser, thereby enabling him to carry out the pistol assault. The gunshot was the culmination of an ongoing assault, in which the vehicle played an essential and integral part. Additionally, only a motor vehicle could have provided the assailant a quick and successful escape. Thus, we find a sufficient causal connection exists between the use of the assailant's vehicle and Howser's injuries.

Once causation is established, the court must determine if an act of independent significance occurred breaking the causal link. *Klug,* 415 N.W. (2d) at 878. This also is consistent with South Carolina precedent. In *Plaxco v. United States Fidelity and Guaranty Co.,* 252 S.C. 437, 166 S.E. (2d) 799 (1969), the vehicle's battery was used to start the engine of an airplane. Once this was accomplished, the airplane's brakes failed, causing it to move forward and damage another plane. This Court found the only connection between the vehicle and the plane was the use of the vehicle to start the plane. Since that purpose had been completed when the plane moved forward, any causal connection was broken and the accident resulted from the use of the plane and not the vehicle. *Id.* at 441, 166 S.E. (2d) at 801. *See also Hite v.*

*Hartford Accident & Indem. Co.*, 288 S.C. 616, 344 S.E. (2d) 173 (Ct. App. 1986), ("if the injury is directly caused by some independent act or intervening cause wholly disassociated from, independent of and remote from the use of the automobile, the injury is not the result of the 'use' of the automobile").

In this case, no independent act occurred to break the causal link. Here, as in *Klug*, the unknown driver's use of his vehicle and the shooting were inextricably linked as one continuing assault. Accordingly, we conclude that for the purposes of Howser's uninsured motorist coverage, her injuries arose out of the use of her assailant's vehicle.[2]

> 2. Is, under the circumstances of this case, subsection 2 of Section 38-77-170 ('Conditions to sue or recover under uninsured motorist provision . . .') satisfied by the presence of an independent witness to the accident causing the injury of the defendant in this case, even though the injury was not caused by 'physical contact with the unknown vehicle?'

The applicable statute referred to in this question provides:

> Conditions to sue or recover under uninsured motorist provision when owner or operator of motor vehicle causing injury or damage is unknown.
>
> If the owner or operator of any motor vehicle which causes bodily injury or property damage to the insured is unknown, there is no right of action or recovery under the uninsured motorist provision, unless:
>
> (1) the insured or someone in his behalf has reported the accident to some appropriate police authority within a reasonable time, under all the circumstances, after its occurrence;
>
> (2) the injury or damage was caused by physical contact with the unknown vehicle, *or the accident must have been witnessed by someone other than the owner or operator of the insured vehicle;*

---

[2] The third prong of the *Klug* analysis requires the use of the vehicle be limited to that of providing transportation. Here the vehicle was being used for transportation. Thus, we need not determine whether this element is mandated under our law.

(3) the insured was not negligent in failing to determine the identity of the other vehicle and the driver of the other vehicle at the time of the accident.

S.C. Code Ann § 38-77-170 (1989) (emphasis added). The underlined portion was added to the statute in 1987.[3] Prior to that time, some physical contact with an unidentified vehicle was a prerequisite to coverage. *Davis v. Doe*, 285 S.C. 538, 331 S.E. (2d) 352 (1985).

The purpose of the second condition in this statute is to assure adequate proof the accident involved a second unknown vehicle. *Coker v. Nationwide Insurance Co.*, 251 S.C. 175, 161 S.E. (2d) 175 (1968). The legislature, by the 1987 amendment, has determined an independent witness is sufficient to reduce the possibility of false claims. Nevertheless, Wausau maintains that the prefatory language of Section 38-77- 170 which provides "[i]f the owner or operator of any *motor vehicle which causes bodily injury or property damage* to the insured is unknown . . ." (emphasis added) continues to restrict application of this statute to cases in which the vehicle is the direct cause of the injury. We find this language is not intended to require any more of a causal relationship than is necessary for the determination that the injury or damage arose out of the ownership, maintenance or use of the uninsured vehicle as required in Section 38-77-140. The interpretation urged by Wausau clearly would be contrary to the legislature's intent in amending the statute deleting the physical contact requirement. Accordingly, we hold no physical contact with the unknown vehicle is necessary when a witness other than the owner or driver of the insured vehicle is available to attest to the facts of the accident.

Accordingly, the order of the circuit court affirming the probate court is reversed.

Certified questions answered.

---

[3] 1987 S.C. Acts 166 § 25. This provision was amended again in 1989 to provide the witness must attest to the facts of the accident by an affidavit which prominently displays in bold print the following: "A FALSE STATEMENT CONCERNING THE FACTS CONTAINED IN THIS AFFIDAVIT MAY SUBJECT THE PERSON MAKING THE FALSE STATEMENT TO CRIMINAL PENALTIES AS PROVIDED BY LAW." 1989 S.C. Acts 148 § 53.